## Lancaster County Bank, for use, *versus* Gross *et al.*

*Attachment-execution, practice in.—Answer of garnishees, the sole found-ation of judgment.—Right of third parties not to be decided upon answers.*

1. In attachment-execution, the answers of the garnishees to the interrogatories are the exclusive foundation of the judgment to be entered thereon : and if the facts stated in the answers are insufficient to entitle the plaintiff to judgment, it is the duty of the court to refuse judgment and discharge the rule to show cause.

2. Thus where the answers of executors admitted a sum of money in hand as the share of the defendant, an heir of the decedent's estate, but averred an assignment to a third person, without giving the assignment itself or any facts relating thereto. *Held*, that the court should have refused judgment, discharged the rule, and ordered the cause to be proceeded in, to issue and trial, in due course of law, and that it was error to decide that the legacy attached was the property of the assignee.

ERROR to the Common Pleas of *Lancaster county*.

This was an attachment-execution, by The Lancaster Bank for the use of Martin Gross, on a judgment against Jacob L. Gross, in which Michael Moore and Benjamin G. Getz, executors of Ann Maria Gross, deceased, were summoned as garnishees.

The facts of the case were as follows :—

Jacob L. Gross was indebted to the Lancaster County Bank, and gave his judgment-bond, dated the 4th day of April 1857, conditioned to pay $6500 on the 1st day of April 1858. Martin Gross became liable to the said bank for the payment of said bond by his guarantee, who paid the same the 7th day of October 1858. The judgment being then marked for his use, in satisfaction of which he issued an attachment, *ad lev. deb.*, and attached the legacy coming to Jacob L. Gross, under the will of Ann Maria Gross, in the hands of Michael Moore and Benjamin G. Getz, executors of said Ann Maria Gross, deceased, December 16th 1863. The plaintiff in the attachment issued his interrogatories to Michael Moore and Benjamin G. Getz, garnishees of Jacob L. Gross, January 4th 1864. They filed their answers to the same, admitting that they had in their hands, as executors of said deceased, $910.98, coming to said Jacob L. Gross under the said will ; and after paying thereout $181.78, the amount of two attachments, still left a balance of $729.20 in their hands. March 24th 1864—Rule to show cause why judgment should not be entered in favour of plaintiff, on garnishees' answers, for $729.20, the amount admitted by them to be in their hands. On argument, Hannah B. Gross (wife of Jacob L. Gross) claimed the amount in said garnishees' hands, under a paper claimed by her to be an assignment of Jacob L. Gross, dated the 2d day of May 1861, assigning (as she contended) all the right, title, interest, claim,

and demand which he had in both the estates of his two aunts, to wit, Molly Gross, deceased, who died about the 1st of May 1831, and Ann Maria Gross, living at the time but afterwards died, to wit, the 3d day of July 1862; to John H. Reifsnyder, who, on the 6th day of May 1861, transferred the same to said Hannah B. Gross.

The fund in dispute was claimed by plaintiff and defendant before the auditor in the Orphans' Court, distributing the estate of Ann Maria Gross, and the question was referred to the Common Pleas to be determined on the attachment-execution.

The assignment of Jacob L. Gross to Reifsnyder was as follows:

" This indenture, made and concluded this 2d day of May, A. D. 1861, between Jacob L. Gross, one of the heirs in law of Ann Maria Gross and Molly Gross, deceased, of Manheim township, Lancaster county and state of Pennsylvania, of the one part, and John H. Reifsnyder, of the city of Reading, Berks county, and state aforesaid, of the other part. Whereas the said Jacob L. Gross is entitled to a share and interest in lands and tenements, also in money and personal property of Molly Gross, deceased, as aforesaid; and also will have an interest in land, moneys, and personal property of Ann Maria Gross aforesaid; and upon the decease of said Ann Maria Gross aforesaid, said Jacob L. Gross becomes entitled to his share of the estate in both aforesaid. I, the undersigned Jacob L. Gross, do assign, sell and convey, and transfer all my right, title, and interest which I have or may have, to John H. Reifsnyder, and his heirs and assigns for ever, for the sum of $200, in full consideration of my right in the above estate. I hereby acknowledge the receipt in full for the same for ever."

May 6th 1861, John H. Reifsnyder assigned and transferred all his right and interest which he had in said assignment to said Hannah B. Gross.

Jacob L. Gross had a vested right to the amount of $188.86½ in the estate of his deceased aunt, Molly Gross (as appeared by the auditor's report making distribution of said estate), at the time of the execution of said assignment, which was subsequently awarded to Abraham Bauman, who was the assignee of said Jacob L. Gross, under a deed of voluntary assignment for the benefit of creditors.

After argument the court, in an opinion read, decided that the money in the hands of the garnishees belonged to Hannah B. Gross, assignee, and refused judgment to the plaintiff in the attachment.

The error complained of by the plaintiff was in refusing judgment in his favour for the amount admitted to be in the hands of the garnishees, and deciding that the same belonged to Hannah B. Gross, assignee of the expectancy (as they contended for) of Jacob L. Gross, in the estate of Ann Maria Gross, deceased.

*J. B. Amwake* and *A. H. Smith*, for plaintiffs in error, argued:
1. That Jacob L. Gross did not intend or mean to convey his expectancy in Ann Maria Gross's estate, in said deed or assignment. In the premises he designates himself as the heir at law of said Molly Gross and Ann Maria Gross. In the recital he states that he is entitled to both real and personal property in the estate of his deceased aunt, Molly Gross; and also the interest he may acquire in land, moneys, and personal property in the estate of Ann Maria Gross at her death. Neither in the premises or recital does he declare any intention to assign or transfer his expectancy in the estate of Ann Maria Gross to John H. Reifsnyder. In the *habendum* he designates what interest he intended assigning; and that was, all his right and title which he had or might have, to John H. Reifsnyder, and to his heirs and assigns for ever, in consideration of the sum of $200, for his right in the above estate. At the time he made the assignment to John H. Reifsnyder, Molly Gross was deceased, and under her will he was entitled to a present interest in her real and personal estate, which could not be enjoyed by him until after the death of Ann Maria Gross, who had a life estate in the same. Whether he intended to convey his certain fixed interest he had in Molly Gross's estate, under her will, or did he intend to convey his expectancy in Ann Maria Gross's estate, or did he intend to convey his interest in both, is not expressed by him. In the one he had a fixed interest, and in the other he had none; which of the two estates did he mean to convey to Mr. Reifsnyder? It is reasonable to suppose that he intended to convey or assign his interest in that estate only in which he had a vested and fixed right. From the construction of the whole deed, it is apparent that the grantor or assignor did not intend to convey his expectancy in Ann Maria's estate, especially as assignments of expectancies are not looked upon with favour in equity, and as mischievous to the public and fraudulent to the ancestor.

2. Should the court, however, be of opinion that the assignor in said assignment conveyed his expectancy to Mr. Reifsnyder, we still hold that the court below erred in giving effect to the same, for we think the law is that assignments of mere expectancies are void and of no effect, both in law and equity, as a fraud upon the ancestor, productive of public mischief, and against the policy of the law: Boynton *v.* Hubbard, 7 Mass. 112; In re John Wilson's Estate, 2 Barr 330–335. But should the law be that assignments or conveyances of expectancies be sustained in equity, still we think the court below erred in sustaining the assignment of Jacob L. Gross to John H. Reifsnyder, from the evidence before them; for the law is well settled in equity, that the party dealing with the heir or expectant, must establish not merely that there is no fraud, but (as the phrase is) to make good his bargain,

[Lancaster County Bank v. Gross et al.]

that is, to show that a fair and adequate consideration has been paid: Earl of Alderborough v. Frye, 7 Clark & Fin. 436, 456; Peacock v. Evans, 16 Ves. 512, 514; Gowland v. De Faria, 17 Id. 20; Bernal v. Donegal, 1 Blight 594; Hinkman v. Smith, 3 Russ. 433; Edwards v. Brown, 2 Collyer 100. The evidence before the court below on argument was, that the share of Jacob L. Gross, in both the estates of Molly Gross and Ann Maria Gross, amounted to about $1107. If the assignment of Jacob L. Gross is sustained, his transferree has an estate worth $1107 for the consideration of $200.

Relief in equity, in such cases, is granted on general principles of mischief to the public, without requiring any particular evidence of imposition, unless the contract is shown to be above all exception: Wolmesly v. Booth, 2 Atk. 28; 1 Madd. Ch. Pr. 97–98; Chesterfield v. Jamison, 2 Ves. 149; Gwynne v. Heaton, 1 Brown Ch. R. 1, 9; Henksman v. Smith, 3 Russ. 433; Baylor v. The Commonwealth, 4 Wright 37. On the argument in the court below the assignee did not offer any testimony to show the fairness of the transaction. Courts of equity assume the ground in all transactions of this nature with the heir expectant, that there is either direct or implied fraud upon the parent or other ancestor, who from ignorance of the transaction is misled into false confidence in the disposition of his property: King v. Hamlet, 4 Sim. 182.

3. There is another ground on which we think the court below erred in sustaining the assignment; and that is, the assignment was made by Jacob L. Gross to Mr. Reifsnyder to delay, hinder, and defraud his creditors; although a consideration of $200 is expressed in the deed, yet there was no evidence that one cent was paid. This, coupled with the fact that only four days after the transfer from Gross to Reifsnyder, he, Mr. Reifsnyder, assigned the same over to Hannah B. Gross (the wife of the assignor). At the time of the transaction Gross was largely indebted, as appears by the judgment due and unpaid on which this attachment is issued; and also that he transferred all his property, real and personal, to Abraham Bauman, for the benefit of creditors. In order to entitle the assignee (Hannah B. Gross) to hold the fund attached, she ought to have produced evidence before the court of the fairness of the transaction, and that a valuable consideration was paid by her for the same out of her own separate estate; and in the absence of such proof before the court, the court was not justified to give the fund attached to her; Walker v. Reamy, 12 Casey 410; Rhodes v. Gordon, 2 Wright 277; Winter & Hartman v. Walter, 1 Id. 166; Auble's Administrator v. Mason, 11 Casey 261.

*O. J. Dickey* and *S. H. Price*, for defendant.—1. The first

question presented by plaintiff is, whether Jacob L. Gross intended to convey any expectancy in the estate of Anna Maria Gross? This seems free of difficulty. In the assignment he states, that upon the death of Anna Maria Gross he will have an interest in her estate, and that interest he expressly conveys. Whilst she was living, he had and could have no interest save a contingent one in her estate. It is true he attempted to sell also his vested interest in the estate of Molly Gross, in the same instrument, which was defeated by a former assignment; but that cannot affect the sale of his contingent interest in the estate of Anna Maria Gross. The relationship of Anna Maria Gross and Jacob L. Gross, the date of her will, August 22d 1859, and the date of assignment, May 2d 1861, go to show that Jacob L. Gross knew he was an heir at law of Anna Maria Gross, and knew her then testamentary intentions with regard to her estate, or why does he say in the deed, " and also will have an interest in lands, moneys, and personal property of Anna Maria Gross aforesaid." Why assign an interest he will have, as he says he does, if he only intended to assign what he already had vested in him ?

2. On plaintiff's point as to the validity in equity of an assignment of an expectancy, we call attention to the following authorities in addition to those there cited: Hare & Wallace's Leading Cases in Equity, vol. 1, 307, * page 652; Brightly's Eq. 297, 353; Smilie's Estate, 10 Harris 134; Nesmith *v.* Drum, 8 W. & S. 10; Baylor *v.* Commonwealth, 4 Wright 37.

3. The adequacy of the consideration was not disputed in the court below. The sum of $200 is certainly a valuable consideration, and where no question is raised, or even where one is raised, a court would go very far in saying such consideration was an inadequate price of an interest amounting to $729.20 (and not $1107 as stated in plaintiff's argument), which was contingent upon the survivorship of the assignor, and the whim or caprice of a woman. The cases cited and relied upon by plaintiffs, are the exceptional cases of dealing with young heirs or inexperienced and ignorant persons; where inadequacy of price is joined with other circumstances, and then seized upon to set aside such assignment or sales. The value of such interest is to be estimated and calculated with reference to the time of the contract and not to the result: Gowland *v.* De Faria, 17 Ves. 20, 25.

4. Where courts of equity set aside sales of expectancies on the ground of inadequacy of price, they will only give relief upon the payment of the sum advanced with interest and costs: Twiselton *v.* Griffith, 1 P. Wms. 310, and the cases cited in American Leading Cases in Equity, vol. 1, 589. There is no allegation of ignorance, imbecility, oppression or fraud in fact, nor any offer to repay the money paid or do equity. The assignment under seal imported a valuable consideration, and there was no impeachment

of the fairness of the transaction—in such case no proof is required: Hancock's Appeal, 10 Casey 155.

5. As to this assignment being in fraud of creditors, we do not comprehend plaintiff's argument, how it is possible for a creditor to be hindered, delayed, or defrauded out of that upon which he has no lien or claim. At the time of the assignment Jacob L. Gross had nothing in the estate of Ann Maria Gross which could in any manner be made the subject of a creditor's pursuit, and he could not therefore be hindered or delayed.

The opinion of the court was delivered, May 24th 1865, by

AGNEW, J.—The question decided by the court below, really was not in the case as it appeared before them. The general and proper practice is to put the motion for judgment against the garnishees upon their answers, on the record, in the shape of a rule to show cause. This does not appear in the record, but it was manifest the cause was before the court below upon a motion for judgment, on the answers to the interrogatories. In such a case, the court cannot go outside of the answers, or receive extraneous proof to qualify or contradict. The admissions, like a special verdict, form the exclusive foundation of the judgment. If the facts stated appear to be insufficient to entitle the plaintiff to a judgment, the court refuse judgment and discharge the rule, leaving the plaintiff at liberty to rule the garnishees to plead to issue and to proceed to trial, the plaintiff taking upon himself the risk of the costs, if he fail to establish more than the garnishees admit in their answers.

Now as this case appeared upon the answers, there was an admission of the sum of $729.20 found by an auditor who made distribution of the estate of Ann Maria Gross, deceased, coming to the defendant as a legacy under her will, and that this sum was ready to be paid out when the rival claims indicated in the auditor's report should be determined by the court. The answer then refers to the auditor's report and makes it part of it. Referring to the auditor's report, thus incorporated into the answer, we find this statement and no more—that Hannah B. Gross claims the share of Jacob L. Gross (the defendant), under a transfer, dated 2d of May 1861, to John H. Reifsnyder, and assigned by him to the said Hannah B. Gross on the 6th May 1861, recorded May 15th 1862, all before the death of testatrix—that the executor had no notice of the transfers before the audit, and that the Lancaster Bank claims this share under its attachment. The auditor then, without deciding, refers the matter to the determination of the Orphans' Court. It will be observed then that the report does not furnish the assignments themselves, nor any facts bearing upon the circumstances of Jacob L. Gross, the defendant, or upon the consideration of the assignments. We have then simply the

[Lancaster County Bank *v.* Gross *et al.*]

fact furnished by the answer that this legacy had been assigned by Gross, the defendant, before the service of the attachment. This was sufficient for the court to refuse judgment, for it could not go outside of the answers to try the case. That can be done only upon an issue wherein the facts would be submitted to the jury. If the court should undertake to try the cause before itself, how is it possible its errors could be corrected? The facts constituting fraud, want of consideration, or other matter alleged against the assignment, cannot appear in the record. There is no bill of exceptions and no mode of bringing them here for review. Though the answers admitted the legacy to Jacob L. Gross, and its amount, they did not admit it as a debt owing and payable to him, for they averred that it had been assigned to Reifsnyder before service of the attachment. The court was therefore right in refusing judgment to the plaintiff, on the answers of the garnishees, but the judgment was entered incorrectly in point of form, as an absolute decision that the money belonged to Hannah B. Gross. We correct this by entering the order that the court refuse judgment to the plaintiff upon the answers of the garnishees, discharge the rule to show cause, and give leave to the plaintiff to proceed and rule the garnishees to plead to issue and go to trial. The case then can be heard on all its facts, whether of fraud or of inadequacy of consideration, as bearing upon the question how far an assignment of a legacy or distributive share in mere expectancy will be supported in equity.

And now, May 24th 1865, the court modify the judgment of the court below by refusing judgment to the plaintiff below upon the answers of the garnishees, discharge the rule to show cause, and direct the cause to proceed to issue and trial in due course of law.